IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| AGILIS BENEFIT SERVICES LLC, DALE K. EDWARDS, H. DAVID WRIGHT and ADELENE V. PIPER,<br><br>             Plaintiffs,<br><br>   v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br>             Defendant. | | No. 5:08-cv-00213-DF-CMC |

**PLAINTIFFS, AGILIS BENEFIT SERVICES, LLC, DALE K. EDWARDS, H. DAVID WRIGHT AND ADELENE V. PIPER'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF**

**TO THE HONORABLE DAVID J. FOLSOM, UNITED STATES DISTRICT COURT JUDGE:**

COME NOW Agilis Benefit Services LLC ("Agilis"), Dale K. Edwards, H. David Wright and Adelene V. Piper (the "Individual Plaintiffs"), Plaintiffs herein, who make and file this, their Motion for Partial Summary Judgment and Brief in Support Thereof (the "Motion"), on the question of whether Travelers Casualty and Surety Company of America ("Travelers"), Defendant herein, has a duty to defend the Plaintiffs against a pending federal investigation and in support whereof would respectfully show unto the Honorable Court as follows:

**I.**
**Introduction**

This is an insurance coverage dispute.  Travelers issued to Agilis a directors and officers liability policy that covers claims made against Agilis or its directors and officers during the policy period for wrongful acts and obligates Travelers to defend all such claims.  Agilis and three of its officers and directors now seek to recover the legal fees and costs incurred by them in defending themselves against an investigation in which the Internal Revenue Service ("IRS") appears to be alleging that the Individual Plaintiffs were involved in "promoting" and "operating" alleged tax evasion schemes known as EXTRA and VEXTRA and that Agilis and other entities

288208

controlled by the Individual Plaintiffs were used in implementing the alleged schemes.[1]  The

Plaintiffs' Complaint asserts counts for breach of contract, failure to promptly pay in violation of

Chapter 542 of the Texas Insurance Code, unfair and deceptive acts or practices in violation of

Chapter 541 of the Texas Insurance Code and attorney's fees.  This motion, however, is limited

to the threshold issue of whether Travelers has a duty to defend the underlying investigation.

## II.
## Statement of the Issue to be Decided by the Court

Whether Travelers has a duty to defend the Plaintiffs against the underlying federal

investigation.

## III.
## Evidence Relied upon for Summary Judgment

In support of this Motion, the Plaintiffs rely on the affidavits listed below and exhibits

thereto, on the arguments and authorities presented herein, and on the current pleadings on file

in this case, of which the Plaintiffs ask the Court to take judicial notice.

The affidavits and exhibits listed below are submitted with this Motion as evidence and

are explicitly incorporated herein by reference, as if set forth at length.  For the convenience of

the Court, these affidavits and exhibits are included in an Appendix with consecutively

numbered pages, which Plaintiffs will cite as "App. __.":

Affidavit of H. David Wright:

> Exhibit A, Private Company Directors and Officers Liability Plus+ Policy
> no. 104468715, issued by Travelers Casualty and Surety Company of
> America to Agilis Benefit Services LLC, effective April 18, 2006 to April
> 18, 2008

> Exhibit B, United States District Court, District of the Virgin Islands,
> Search Warrant for the business premises of Agilis Benefit Services, LLC,
> Executive Benefit Group and Professional Holding Company, 340 Strand
> Street, Frederiksted, Case No. Mag2007/0031, issued July 16, 2007 and

---

[1]  Although Plaintiffs must recite the allegations made by the government in order to establish their
entitlement to their legal fees and expenses under the Travelers policy, Plaintiffs in no way admit to the
truth of those allegations and strenuously deny them.

attached Application and Affidavit for Search Warrant, Case No. Mag2007-0031, dated July 16, 2007

Exhibit C, United States District Court, District of South Carolina, Subpoena to Agilis Benefit Services LLC to Testify Before Grand Jury, dated July 10, 2007

Exhibit D, United States District Court, District of the Virgin Islands, Search Warrant for the Virgin Islands Community Bank, Christiansted Branch, Safety Deposit Boxes or Lock Boxes under the control of Dale K. Edwards and/or David H. Wright and/or Jennifer Piper, Case No. Mag. No. 07/0032, issued July 24, 2007

Exhibit E, United States District Court, District of South Carolina, Judicial District of South Carolina, Application and Affidavit for Search Warrant of Law Offices of O'Connor, Kachmarsky & Taylor, Case No. 560530276, dated July 18, 2007 and attached Affidavit for Search Warrant and Search Warrant

Affidavit of Dale K. Edwards

Exhibit A, August 10, 2007 Letter from Dale K. Edwards to Travelers

Exhibit B, October 5, 2007 letter from Holly M. LaFevers to Dale Edwards

Exhibit C, May 28, 2008 letter from Michael J. Rosen, Esq. to Peter K. Rosen, Esq.

Affidavit of Adelene V. Piper

Exhibit A, United States District Court, District of the Virgin Islands, Search Warrant for the business of Professional Holding Company, 321 King Street, Suite 7, Frederiksted, Case No. Mag. No. 2007-31, issued July 18, 2007 and attached Application and Affidavit for Search Warrant, Case No. 2007-31, dated July 18, 2007

## IV.
## Statement of Undisputed Material Facts

### The Travelers Policy

1.      Travelers issued Private Company Directors and Officers Liability policy no. 104468715 (the "Policy") to Agilis.  Affidavit of H. David Wright ("Wright Aff."), ¶ 4, App. 1.

2.      The Policy was effective April 18, 2006 through April 18, 2008.  Policy Declarations, App. 5.

3.      Agilis is the "Insured Organization" as that term is used in the Policy.  Policy
Declarations and §§ II.G, II.L, App. 5, 8.

4.      Current and former directors and officers of Agilis are "Insured Persons" under
the Policy.  Policy, § II.H, App. 8.

5.      The Policy obligates Travelers to pay "Loss" resulting from "Claims" first made
during the policy period against Agilis or its officers and directors for "Wrongful Acts."   Policy,
§ I, App. 7.

6.      The Policy states that Travelers has a "duty to defend any 'Claim', even if such
'Claim' is groundless, false or fraudulent."  Policy, § VIII.A, App. 11-12.

7.      The Policy also defines "Loss" to include "Defense Expenses," which include
"reasonable and necessary legal fees and expenses incurred in the investigation, defense,
settlement and appeal of a Claim."  Policy, §§ II.B, II.I, App. 7-8.

8.      The Policy defines the term "Claim" to include a "written demand for monetary or
non-monetary relief" against an "Insured" for a "Wrongful Act".  Policy, § II.A.1, App. 7.

9.      The Policy defines the term "Claim" to also include a "formal administrative or
regulatory proceeding . . . commenced by the filing of a notice of charges, formal investigative
order or similar document" against an "Insured" for a "Wrongful Act".  Policy, § II.A.4, App. 7.

10.      The Policy defines the term "Wrongful Act" to include "any actual or alleged act,
error, omission, misstatement, misleading statement or breach of duty" by Agilis or by "an
Insured Person in his or her capacity as a director or officer of the Insured Organization."
Policy, § II.S, App. 8-9.

11.      The Policy includes an endorsement titled "Broad General Professional Errors
and Omissions Exclusion" ("the Professional Services Exclusion").  Policy, Endorsement
DO2049, App. 20.

12.      The Professional Services Exclusion states that Travelers is not liable for "Loss",
including "Defense Expenses", "resulting from any Claim made against any Insured based upon,

alleging, arising out of, directly or indirectly resulting from, or in any way relating to any actual or alleged act, error or omission by any Insured with respect to the rendering of, or failure to render professional services for any party."  Policy, Endorsement DO2049, App. 20.

      13.    The Policy includes an endorsement titled "Partnership and Joint Venture Exclusion."  Policy, Endorsement DPR-1219, App. 21.

      14.    The Partnership and Joint Venture Exclusion states that the Policy does not apply to any Claim "based upon, alleging, arising out of, or in way relating to, directly or indirectly:

      a.    any Insured acting as a partner in any general or limited partnership, a joint venturer in any joint venture, a managing partner or any other administrator of any general or limited partnership or joint venture, or any equivalent position with any partnership or joint venture;

      b.    any offering memorandum, partnership agreement, joint venture agreement, registration statement or prospectus for any general or limited partnership or joint venture; or,

      c.    the control, maintenance, performance, operation, and/or ownership of any general or limited partnership or joint venture."

Policy, Endorsement DPR-1219, App. 21.

### The Underlying Investigation

<u>The Agilis Subpoena</u>

      15.    On July 18, 2007, Agilis was served with a federal document subpoena (the "Agilis Subpoena") issued by an Assistant United States Attorney for the District of South Carolina pursuant to a federal grand jury investigation.  Wright Aff., ¶ 7 and Ex. C, App. 2, 38-46.

      16.    The subpoena required Agilis to produce all financial, banking, loan and customer records relating to financial transactions of Agilis and each of the Individual Plaintiffs as well as other entities and persons.  Agilis Subpoena, App. 39-40.

      17.    The subpoena stated that questions regarding the subpoena should be directed to the IRS's Criminal Investigation Division.  Agilis Subpoena, App. 38.

<u>The Agilis Search Warrant</u>

18.     Also on July 18, 2007, the Criminal Investigation Division of the IRS executed a search warrant for the United States Virgin Islands offices of Agilis and two other entities (the "Agilis Search Warrant").  Wright Aff., ¶¶ 5-6, App. 2.[2]

19.     The Agilis Search Warrant identified Agilis and each of the Individual Plaintiffs as "parties of interest."  Agilis Search Warrant, App. 30-31.

20.     The Agilis Search Warrant authorized the seizure of, among other materials, all documents relating to EXTRA and VEXTRA, including promotional materials.  Agilis Search Warrant, App. 35.

21.     The Agilis Search Warrant authorized the seizure of, among other materials, financial records, correspondence, travel records, address books, calendars and other personal records of each of the Individual Plaintiffs.  Agilis Search Warrant, App. 33-34, 36.

22.     An "Application and Affidavit for Search Warrant" was attached to the copy of the search warrant that was provided to Agilis.  Wright Aff., ¶ 6, App. 2.

23.     The Application and Affidavit was signed by a Special Agent with the IRS's Criminal Investigation Division.  Agilis Search Warrant, Application and Affidavit, App. 25.

24.     The Application and Affidavit stated that the Special Agent had reason to believe that the items to be seized were evidence of violations of 26 U.S.C. § 7201, 26 U.S.C. § 7212 and 18 U.S.C. § 371.  Agilis Search Warrant, Application and Affidavit, App. 25.

25.     Title 26, § 7201 imposes penalties on anyone who willfully attempts, "in any manner", to evade or defeat any tax imposed by the Internal Revenue Code.

---

[2]  Because one of the other two entities, Professional Holding Company, in fact was located at a different address, the government returned to the Court and obtained a separate warrant for that location.  Piper Aff., ¶ 4, App. 137.

26.     Title 26, § 7212 imposes penalties on anyone who "in any way" "corruptly or by force or threats of force obstructs or impedes, or endeavors to obstruct or impede the due administration of" the Internal Revenue Code.

27.     Title 18, § 371 imposes penalties on anyone who conspires to commit any offense against the United States or to defraud the United States or any agency thereof.

28.     Although the Application and Affidavit for the Agilis Search Warrant referred to an attached affidavit, the copy of the Application and Affidavit that was attached to the Agilis Search Warrant did not have any affidavit attached.  Wright Aff., ¶ 6, App. 2.

<u>The Individual Plaintiffs' Search Warrant</u>

29.     A few days later, the Criminal Investigative Division of the IRS executed a search warrant for safety deposit and lock boxes under the control of the Individual Plaintiffs, Dale Edwards, H. David Wright and Adelene V. Piper (the "Individual Plaintiffs' Search Warrant"). Wright Aff., ¶¶ 8-9, App. 2.

30.     The Individual Plaintiffs' Search Warrant identified Agilis and each of the Individual Plaintiffs as "parties of interest."  Individual Plaintiffs' Search Warrant, App. 49-50.

31.     The Individual Plaintiffs' Search Warrant authorized the seizure of, among other materials, all documents relating to EXTRA and VEXTRA, including promotional materials. Individual Plaintiffs' Search Warrant, App. 54.

32.     The Individual Plaintiffs' Search Warrant authorized the seizure of, among other materials, financial records, correspondence, travel records, address books, calendars and other personal records of each of the Individual Plaintiffs.  Individual Plaintiffs' Search Warrant, App. 52-53, 55.

<u>The O'Connor Search Warrant Application</u>

33.     In or about October 2007, the United States Attorney for the District of South Carolina unsealed an Application and Affidavit for a Search Warrant for the Law Offices of O'Connor, Kachmarsky & Taylor (the "O'Connor Search Warrant").  Wright Aff., ¶ 11, App. 3.

34.     An Affidavit of a Special Agent with the IRS's Criminal Investigation Division (the "O'Connor Warrant Affidavit") was attached to the Application and Affidavit for the O'Connor Search Warrant.  Wright Aff., ¶ 11, App. 3.

35.     The O'Connor Warrant Affidavit states that IRS special agents had been involved in a criminal investigation into the activities of John Fitzgerald O'Connor, David Glen Taylor, John M. Kachmarsky[3] and "others, known to assist and associate with these individuals" concerning tax plans, including plans marketed under the names of EXTRA and VEXTRA, "that appear to be abusive tax shelters."  O'Connor Warrant Affidavit, ¶ 2, App. 58-59.

36.     The O'Connor Warrant Affidavit refers to the EXTRA and VEXTRA tax plans as a "tax evasion scheme."  O'Connor Warrant Affidavit, ¶ 30, App. 72.

37.     The O'Connor Warrant Affidavit includes several paragraphs that specifically refer to Agilis and the Individual Plaintiffs.  O'Connor Warrant Affidavit, ¶¶ 34-38, 42-43, App. 74-76, 82-88.

38.     The O'Connor Warrant Affidavit alleges that the Individual Plaintiffs "promote and/or operate EXTRA/VEXTRA from offices located in the USVI."  O'Connor Warrant Affidavit, ¶ 34, App. 74.

39.     The O'Connor Warrant Affidavit alleges that Agilis and other entities controlled by the Individual Plaintiffs are used in the EXTRA and VEXTRA plans.  O'Connor Warrant Affidavit, ¶ 34, App. 74.

40.     The O'Connor Warrant Affidavit alleges that Agilis and the other entities allegedly "create paperwork to disguise the client's diverted funds as expense items, arrange the layering of financial transactions to obscure the true nature of the client's diverted funds and create

_____

[3]  O'Connor, Taylor and Kachmarsky were identified as "parties of interest" in the application for the Agilis Search Warrant, see App. 30, and records concerning those individuals were among the records subpoenaed from Agilis, see App. 39.

commissions for themselves and/or other EXTRA/VEXTRA promoters."  O'Connor Warrant Affidavit, ¶ 34, App. 74.

41.     The O'Connor Warrant Affidavit alleges that, "No administrative, management or other services are performed to justify these expenses," that is, the expenses reported by EXTRA and VEXTRA clients on their tax returns.  O'Connor Warrant Affidavit, ¶¶ 32, App. 73.

42.     The O'Connor Warrant Affidavit alleges that "there is no true business purpose or economic substance" for the EXTRA and VEXTRA clients' financial transactions.  O'Connor Warrant Affidavit, ¶¶ 41-43, App. 80, 83, 86.

43.     The O'Connor Warrant Affidavit alleges that EXTRA and VEXTRA "merely pass[] income to USVI entities for the purpose of disguising the true ownership and location" of the client's funds.  O'Connor Warrant Affidavit, ¶¶ 41-43, App. 81, 84, 86.

44.     The only documents that the government has released to Plaintiffs concerning its investigation are the documents referenced above.  Wright Aff., ¶ 13, App. 3; Edwards Aff., ¶ 9, App. 129; Piper Aff., ¶ 9, App. 138.

### Notice of the Investigation to Travelers and Travelers' Denial of Coverage

45.     By letter dated August 10, 2007, Plaintiffs gave Travelers notice of the government investigation and advised Travelers that they had retained counsel to defend themselves.  Edwards Aff., ¶ 6 and Ex. A, App. 129, 130.

46.     By letter dated October 5, 2007, Travelers denied coverage on the ground that the investigation did not constitute a "Claim."  Edwards Aff., ¶ 7 and Ex. B, App. 129, 131-32.

47.     After it reviewed the O'Connor Warrant Affidavit, Travelers advised Plaintiffs that Travelers would treat the Agilis Subpoena as a "Claim", subject to a complete reservation of Travelers' rights.  Edwards Aff., ¶ 8 and Ex. C, App. 129, 133-36.

48.     Travelers advised Plaintiffs that it nonetheless was continuing to deny coverage based on the Professional Services Exclusion.  Edwards Aff., ¶ 8 and Ex. C, App. 129, 134.

49.     Travelers also stated that to the extent that the programs or conduct at issue related to the establishment of a partnership or joint venture, the Policy's Partnership and Joint Venture Exclusion would apply to bar coverage.  Edwards Aff., ¶ 8 and Ex. C, App. 135.

**V.**
**Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party is "entitled to a judgment as a matter of law" because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Id.* at 323.  This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in pertinent part, that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.*  (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

**VI.**
**Argument**

**A.     THE PROFESSIONAL SERVICES EXCLUSION DOES NOT EXCUSE TRAVELERS FROM DEFENDING.**

The primary basis on which Travelers appears to be denying coverage, and thus refusing to defend, is the "Professional Services" Exclusion.  That Exclusion does not excuse Travelers from defending.  Given the broad and amorphous nature of the government's allegations and the information that it is seeking (including financial records, correspondence, travel records, address books, calendars, see App. 33-34, 36, 40), Travelers cannot begin to establish, let alone "conclusively" establish, as it must, that the investigation is solely based on the Plaintiffs' rendering of or failure to render professional services.  *See Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hvalinka, L.L.P.*, 267 F.Supp.2d 601, 612 (E.D. Tex. 2003) (insurer must defend unless the exclusion is "conclusively" activated).  Indeed, it appears that an underlying premise of the investigation is that the Plaintiffs' conduct was wrongful precisely because they were not rendering professional services or services at all.  O'Connor Warrant Affidavit, ¶¶ 32, 34, 41-43, App. 73, 74, 80-86.

>     **1.     The Professional Services Exclusion Does Not Reach All of the Conduct That the Government Is Investigating.**

The Professional Services Exclusion states that Travelers is not liable for a "Loss", including "Defense Expenses":

> resulting from any Claim made against any Insured based upon, alleging, arising out of, directly or indirectly resulting from, or in any way relating to any actual or alleged act, error or omission by any Insured with respect to the rendering of, or failure to render professional services for any party."

Policy, Endorsement DO 2049, App. 20.  Under Texas law, a task qualifies as a "professional service" only if arises out of acts particular to the individual's specialized vocation.  *Atlantic Lloyd's Ins. Co. of Texas v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 477 (Tex. App.-Dallas 1998).  An act is not deemed a professional service merely because it is performed by a professional.  *Id*.  Rather, it must be necessary for the professional to use his specialized

knowledge or training.  *Id*.  To determine whether a particular act is considered a professional

service, the focus is on the act itself and not the title or character of the party performing the act.

*Id*. at 476.

As the insurer, Travelers has the burden of proving that the exclusion applies.  Tex. Ins.

Code. Ann. § 554.002 (Vernon 2006).  *See also Westport*, 267 F.Supp.2d at 622.  Further,

Travelers must do so in the face of the long-standing rules requiring that the Court liberally

construe the allegations against the Plaintiffs in favor of coverage, narrowly interpret the

exclusion and resolve all doubts regarding Travelers' duty to defend in favor of Plaintiffs.  *See*

*GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *Gore*

*Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008) (applying

Texas law); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).  As this Court stated

in *Westport*:

> [I]f the allegations in the underlying pleadings could even potentially trigger
> coverage, and the allegations do not on their face conclusively activate an
> exclusion, then the insured must defend its insured against the claim.

and:

> "If the petition only alleges facts excluded by the policy, the insurer is not
> required to defend.  Similarly, if the petition only alleges facts that are covered by
> the policy, a duty to defend exists.  Between those two poles, the presumption of
> coverage exists."

267 F. Supp. 2d at 612, 621.

Here, it is impossible, based upon the subpoena and search warrants, to even divine all

of the conduct that is being investigated, let alone conclude that it all constitutes "professional

services."

> ### a.   Violations of 26 U.S.C. §§ 7201 and 7212 Could Encompass Actions That Do Not Involve Professional Services.

The Application and Affidavit for the Agilis Search Warrant states that Plaintiffs are

"parties of interest" and that the materials to be seized (which include the Plaintiffs' financial

records, correspondence, travel records, address books and calendars) are evidence of

violations of 26 U.S.C. § 7201 and 26 U.S.C. § 7212.  App. 25, 30-31, 33-34, 36.  Both of these statutes encompass an almost limitless range of actions:

- Section 7201, Title 26 imposes penalties on anyone who attempts "in any manner" to evade or defeat any tax imposed by the Internal Revenue Code.

- Section 7212, Title 26 imposes penalties on anyone who "in any . . . way" corruptly obstructs or impedes, or endeavors to obstruct or impede the due administration of the Internal Revenue Code.

These statutes do not require that Plaintiffs have engaged in a specific profession or in "professional" conduct in order to run afoul of the statutory prohibitions.  Moreover, Texas courts repeatedly have held that just because someone is a "professional," that does not mean that at all times and for all purposes he or she is rendering professional services.  *See, e.g.*, *Guar. Nat'l Ins. Co. v. North River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990) (holding under Texas law that a hospital's decision on how to secure the window in a psychiatric patient's room was an administrative, not professional, decision); *Gregg & Valby, L.L.P. v. Great Am. Ins. Co.*, 316 F.Supp.2d 505, 513 (S.D. Tex. 2004) (holding under Texas law that an attorney's billing and fee-setting practices are not professional services).

The Court must liberally construe the search warrants (which trigger a duty to defend, see Section B, *infra*) in favor of coverage.  *GuideOne*, 197 S.W.3d at 308.  The warrants and the range of documents sought by the government are broad enough to encompass alleged violations of §§ 7201 and 7212 that do not involve the rendering of "professional services." Accordingly, Travelers must defend.  *See Westport*, 267 F.Supp.2d at 612 (an insurer must defend if the allegations do not "conclusively" activate an exclusion); *King*, 85 S.W.3d at 197 (all doubts regarding the duty to defend are resolved in favor of the insured).

### b. The Warrants Can Be Read to Allege that No Professional Services Were Involved.

Even assuming that the IRS was confined to the allegations in the O'Connor Warrant Affidavit in establishing violations of 26 U.S.C. § 7201 and § 7212, which it plainly is not, Travelers' assertion that the Professional Services Exclusion bars coverage fails at the threshold, for the simple reason that the IRS is alleging that no professional services were involved at all.  The IRS alleges, for example, that Agilis and the other entities allegedly "create paperwork to disguise the client's diverted funds as expense items" and that "*[n]o administrative, management or other services are performed to justify these expenses.*" O'Connor Warrant Affidavit, ¶¶ 32, 34, App. 73-74 (emphasis added).  The IRS further alleges that the EXTRA and VEXTRA products allegedly promoted by the Individual Plaintiffs "merely pass[] income to USVI entities for the purpose of disguising the true ownership and location" of the client's funds and that "*there is no true business purpose or economic substance*" for these transactions.  *Id.*, ¶¶ 41-43, App. 80-86 (emphasis added).

Although Travelers likely could not show that the referenced administrative and management services were professional in nature, at least not entirely, *see, e.g.*, *Gregg & Valby*, 316 F.Supp.2d at 513 (administrative tasks are not professional services), the IRS's contention appears to be that even these services were not provided.  The Professional Services Exclusion therefore does not apply.  *See Texas Dist. Lutheran Church-Missouri Synod v. Federal Ins. Co.*, No. 03-99-00268, 2000 WL 632648, *6 (Tex. App.-Austin 2000) (not designated for publication) (holding that exclusion barring coverage for claims arising from insured church's operation as an investment adviser or other enumerated businesses did not apply where the plaintiff was alleging that the church should have been licensed in those capacities when it advised plaintiff on managing her assets).

c.      **Promotional Activities Are Not Professional Services.**

Travelers also must defend because the IRS appears to be investigating the Individual

Plaintiffs' for allegedly "promoting" EXTRA and VEXTRA.  O'Connor Warrant Affidavit, ¶ 34,

App. 74.  Under *Atlantic Lloyd's Insurance Company of Texas v. Susman Godfrey, L.L.P.*, 982

S.W.2d 472 (Tex. App.-Dallas 1998), promotional activities are not "professional services."  In

*Atlantic Lloyd's*, which is one of the leading Texas cases on what constitutes a "professional

service," the Court held that a law firm was not engaging in a professional service when it sent a

solicitation letter to a potential client.  *Id.* at 476.  The letter was sent to a former patient of a

physician and stated that the firm had represented another patient who had obtained a

settlement against a physician.  *Id.* at 474.  The law firm's general liability insurer argued that its

policy's professional services exclusion excused it from defending claims brought against the

firm by the physician.  *Id.*

The Court held that the professional service exclusion did not apply because the

solicitation letter did not provide any legal advice.  The letter was simply "an invitation to pursue

the opportunity to render professional services" and, as such, "was incidental to professional

services."  *Id.*  The Court further noted that the solicitation of clients did not require the

specialized skills, education and knowledge particular to the legal profession.  *Id.* at 477.  *See*

*also Westport Ins. Corp. v. Jackson Nat'l Life Ins. Co.*, 900 N.E.2d 377, 381 (Ill. App. 2008)

(holding that an insurance agency's sending of an advertisement that described general

features of group health plans was not a professional service); *Sentry Ins. Co. v. Greenleaf*

*Software, Inc.*, 91 F.Supp.2d 920, 924 (N.D. Tex.) (holding that the insured's advertising of a

product did not amount to a professional service because it did not require professional

expertise), *vacated by agreement*, 2000 WL 33254495 (N.D. Tex. 2000).  Regardless of what

else the IRS might be alleging, the allegation that the Plaintiffs were "promoting" EXTRA and

VEXTRA falls outside the Professional Services Exclusion and obligates Travelers to defend.

*See Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex. App.-Austin 2000) (if an insurer

has a duty to defend its insured against any portion of the underlying suit, then the insurer is required to defend the entire suit).

> ### d.   *Amwest* Does Not Hold that Promotional Activities Are "Professional Services.

In correspondence with the Plaintiffs, Travelers has cited to *Certain Underwriters at Lloyd's, London v. Amwest Financial, Inc.*, No. Civ. H-04-4024, 2005 WL 1994290 (S.D. Tex. 2005) to support its assertion that the promotional activities in which the Individual Plaintiffs allegedly engaged are a "professional service" because ordinary and administrative tasks can be a professional service if they are "vital" to the professional's core business.  Any reliance by Travelers on the *Amwest* case is misplaced.  First, the precedential value of that case is severely undermined by the fact that the insured was *pro se* and did not oppose the insurer's motion for summary judgment.  *Id.* at *1 and n.5.  It therefore is not surprising that the case has not been cited in any other decision.

Second, while *Amwest* states that ordinary and administrative tasks can be professional services if they are vital to the professional's core business, that statement is dicta.  The *Amwest* Court did not hold that the conduct at issue in that case – a mortgage broker's gathering of borrower credit information, taking loan applications, preparing good faith estimates and soliciting services from appraisers, insurance agents and title companies – consisted of ordinary or administrative tasks.  To the contrary, the Court stated that the tasks "required the specialized skills and knowledge of a mortgage broker, and were not merely incidental or administrative in relation to [the broker's] business."  Id. at *8.

Finally, even assuming that ordinary and administrative tasks could qualify as "professional services" in circumstances where they are vital to a professional's core business, Travelers cannot make that showing here.  The subpoena and search warrants do not contain sufficient information to draw any conclusions about the Plaintiffs' core business and whether it is professional in nature.  It is equally impossible to conclude that the Plaintiffs' alleged

promotion of EXTRA and VEXTRA was vital to their core business.  For example, EXTRA and VEXTRA could easily have been promoted by others or by word of mouth.  *Amwest* has no application here.

### e. The IRS's Broad Allegations Are Subject to Multiple Interpretations, Including Interpretations That Do Not Involve Professional Services.

Travelers also is required to defend because the IRS's broad allegations that the Individual Plaintiffs were "promoting" and "operating" the EXTRA and VEXTRA products are open to interpretations that do not involve the rendering of professional services.  In a similar case, *St. Paul Ins. Co. v. Texas Dep't of Transportation*, 999 S.W.2d 881 (Tex. App.-Austin 1999), plaintiffs alleged that the defendant highway department and contractor had "designed, scheduled, constructed and supervised [the construction of]" a five-mile section of a highway. *Id.* at 885. The Court easily disposed of the insurer's argument that the professional services exclusion negated its duty to defend, holding that the plaintiffs' broad allegations were "subject to different interpretations, some of which might not involve professional services even if others do." *Id.* at 887.  *See also Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 372 (5th Cir. 2008) (professional services exclusion did not negate duty to defend where plaintiff could be alleging either negligent design, which would constitute a professional service, or a mistake in implementing a design, which would not).

If allegations that defendants designed, scheduled, constructed and supervised the construction of a highway are not sufficient to trigger the professional services exclusion, the IRS's broad allegations that the Plaintiffs were "promoting" and "operating" the EXTRA and VEXTRA products cannot possibly be sufficient to negate Travelers' duty to defend.  Like the allegations in the *St. Paul* case, the IRS's allegations are subject to "different interpretations." They could be narrowly interpreted to mean that the Plaintiffs were, like the law firm in *Atlantic Lloyd's*, communicating an offer to potential clients to provide professional services.  The allegations also could be interpreted to mean that Plaintiffs were, like the insurance agency in

*Westport v. Jackson*, distributing promotional materials that merely recited general features of the EXTRA and VEXTRA products.  They also could mean, as the IRS in fact appears to be alleging, that the Plaintiffs were "creating paperwork to disguise the client's diverted funds as expense items", *see* App. 74, a task that would not appear to require any special knowledge or training.

While Travelers would like the Court to interpret the Professional Services Exclusion so broadly that it encompasses all of the conduct that the government has identified or conceivably could identify, that would turn Texas law on its head.  It is the allegations against the insured that are to be construed liberally, not the exclusion.  *See GuideOne*, 197 S.W.3d at 308; *Gore Design*, 538 F.3d at 370.  Here, given the IRS's broad allegations and the range of conduct that could be encompassed within those allegations, Travelers must defend.

> **2.     If There Is Any Doubt About Whether the Professional Services Exclusion Applies, Travelers Must Defend, Not Conduct Discovery.**

In its section of the parties' Rule 26 Joint Statement and in communications with Plaintiffs' counsel, Travelers has suggested that whether it has a duty to defend cannot be determined without the Application and Affidavit for the Agilis Search Warrant, a document that the government has not released.  While that might be a colorable argument in a duty to indemnify case, Travelers once again has backwards Texas law on the duty to defend.

Under the "eight corners" or "complaint-allegation" rule applied in Texas, the duty to defend is determined based solely on the allegations in the pleadings and the language in the insurance policy.  *National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination."  *GuideOne*, 197 S.W.3d at 305.  Here, Plaintiffs have provided to Travelers all of the documents concerning the investigation that the government has released and on the basis of which the Plaintiffs retained counsel and

mounted a defense.  Under the eight corners rule, the duty to defend is determined based solely on those documents and the Travelers policy.

The situation here is no different from the situation where, in a civil case, the plaintiff files a complaint that contains broad allegations that may or may not support a covered claim.  In that situation, the insurer is not permitted to conduct discovery to clarify the allegations, but must defend.  *Fair Operating, Inc. v. Mid-Continent Cas. Co.*, 193 Fed. Appx. 302, 304 (5th Cir. 2006) (not selected for publication in the Federal Reporter) (under Texas law, affirming ruling that insurer was not permitted to conduct discovery on the duty to defend, but was required to defend, where "[t]he facts of this case, if further developed, might indicate that [the pollution exclusion applied], but that cannot be determined yet").  *See also GuideOne*, 197 S.W.3d at 311 (even where undisputed extrinsic evidence established that the allegation triggering coverage was incorrect, insurer was required to defend and establish such facts in defense of its insured, rather than as an adversary in a coverage action).

As set forth above, the material released by the government to date is more than sufficient to trigger Travelers' duty to defend.  By arguing that it nonetheless is not obligated to defend without additional inquiry into allegations that the government has not made public, Travelers effectively is arguing that an insurer does not have to defend if it is unclear whether there is a covered claim.  The rule, of course, is precisely the opposite -- if it is unclear whether there is a covered claim, the insurer must defend.  *Westport*, 267 F.Supp.2d at 612, 621.  *See also Gore Design*, 538 F.3d at 368 ("where this doubt, there is a duty to defend").

In any event, as discussed above, the IRS is investigating alleged violations of statutes that are broad in scope.  *See* 26 U.S.C. § 7201 (imposing criminal penalties on anyone who "in any manner" attempts to evade or defeat a federal tax); 26 U.S.C. § 7212 (imposing criminal penalties on anyone who "in any way" corruptly obstructs or impedes or attempts to obstruct or impede the due administration of the tax laws).  While the release by the government of additional documents might illuminate certain theories that the government is pursuing, the IRS

certainly is not confined to those theories.  The disclosure of additional information about the investigation therefore will not change the fact that Travelers is obligated to defend.

> ### 3.    Travelers Knowingly Drafted a Policy In Which It Agreed to Defend Proceedings in Which the Allegations Against Its Insured Would be Unclear.

Any difficulties that Travelers allegedly faces due to uncertainly or ambiguity regarding the government's claims against Plaintiffs is a predicament of its own making.  Travelers knew that the duty to defend is broadly defined, but it then drafted a policy in which it dramatically expanded that duty by defining the term "Claim" to include proceedings other than lawsuits and agreeing to defend any such "Claim."  Policy, §§ II.A, VIII.A, App. 7, 11-12.  The inevitable consequence of that decision is that Travelers is obligated to defend matters that are not yet in suit, and before a plaintiff or prosecutor is required to articulate the claims against the insured in a single document.  To the extent that this results in a situation where there may be uncertainty or ambiguity concerning the claims against the insureds, Travelers, not the insureds, must bear the burden of that uncertainty.

## B.    THE UNDERLYING INVESTIGATION IS A "CLAIM."

Travelers initially denied coverage on the ground that there was no "Claim," but then, after reviewing the O'Connor Warrant Affidavit, withdrew that position and denied coverage based solely on the Professional Services Exclusion.  Edwards Aff., Exs. B, C, App. 131-36.   In its section of the parties' Rule 26 Joint Statement, however, Travelers appears to be arguing that no "Claim" has been asserted against the Individual Plaintiffs.  Any attempt by Travelers to resurrect this issue is ill-fated.  As Travelers no doubt recognized when it withdrew its denial of coverage on the ground that there was no "Claim", the pending federal investigation constitutes a "Claim" within the meaning of both subpart 1 and subpart 4 of the Policy's definition of that term.

1.      **The Pending Investigation Qualifies as a Written Demand for Non-Monetary Relief.**

The Policy obligates Travelers to defend any "Claim" and defines the term "Claim" to mean:

"Claim" means:

1. a written demand for monetary or non-monetary relief;

2. a civil proceeding commenced by service of a complaint or similar pleading;

3. a criminal proceeding commenced by return of an indictment; or

4. a formal administrative or regulatory proceeding, including but not limited to proceedings brought by or before the Equal Employment Opportunity Commission ("EEOC") or similar state or local agency, commenced by the filing of a notice of charges, formal investigative order or similar document;

against an Insured for a Wrongful Act.  Policy, § II.A, App. 7.

The underlying investigation falls within subpart (1) of the definition of "Claim" because it constitutes "a written demand for . . . non-monetary relief."  Policy, § II.A.1, App. 7.  The grand jury subpoena served on Agilis was a written demand for relief in the form of the production of the specified documents.  Had Agilis refused to produce the documents, the government could have moved to compel the production of the documents and, if Agilis continued to resist, had Agilis held in contempt.  The search warrants for materials held by Agilis and the Individual Plaintiffs also were written demands for relief in the form of materials in the Plaintiffs' possession.  Had Plaintiffs attempted to interfere with the execution of the warrants, they would have been subject to arrest and prosecution.  18 U.S.C. § 2231.

Numerous courts have held on similar facts, and under similar policy language, that a government investigation constitutes a claim.  In *Minuteman International, Inc. v. Great American Ins. Co.*, No. 03 C 6067, 2004 WL 603482 (N.D. Ill. Mar. 22, 2004), for example, the Securities and Exchange Commission ("SEC") served subpoenas on a corporation and certain of its officers and employees as part of an investigation into alleged violations of the Securities

and Exchange Act of 1934.  *Id.* at *2.  The corporation sought to recover, under its directors and officers liability policy, the nearly $500,000 in legal fees and costs incurred by it in responding to the subpoenas.  *Id.*  The policy, like the Travelers policy at issue here, defined the term "claim" to include "a written demand . . . for nonmonetary relief made against any Insured" and "a civil, criminal, administrative or arbitration proceeding made against any Insured seeking monetary or non-monetary relief and commenced by . . . the receipt or filing of notice of charges or similar document . . ."  *Id.* at *3.

The insurer conceded that the SEC investigation met the requirement of being a "written demand" or "administrative proceeding", but argued that the investigation was not a proceeding in which any relief was sought.  *Id.* at *5.  The Court rejected this argument, holding that the SEC subpoena sought relief in the form of the production of documents and testimony.  The Court noted that a government subpoena is not a mere request for information but "a substantial demand for compliance by a federal agency with the ability to enforce its demand."  The Court accordingly held that the SEC investigative proceedings constituted a "claim" as that term was used in the policy.  *Id.* at *7.

The Eighth Circuit reached the same conclusion in *Polychron v. Crum & Forster Insurance Companies*, 916 F.2d 461 (8th Cir. 1990).  In that case, an insured bank officer sought to recover, under his bank's directors and officers liability policy, the legal fees and costs incurred by him in defending himself against a federal grand jury investigation.  *Id.* at 462.  Pursuant to the investigation, the grand jury subpoenaed from the bank records for the period when the insured had served as bank president.  An Assistant United States Attorney and two IRS agents also interviewed the insured.  *Id.*  The policy provided coverage for claims made against an insured for wrongful acts.  *Id.*  The policy did not define the term "claim," but the Court interpreted the term to include demands as of right.  *Id.* at 463.

Applying this definition, the Polychron Court held that the grand jury investigation was a "claim."  *Id.*  The function of the subpoena, the Court noted, was to command the production of

documents relating to the insured's conduct.  *Id.*  The same reasoning applies here.  The subpoena and search warrants compelled the production of documents relating to the conduct of Agilis and the Individual Plaintiffs.  The investigation therefore constitutes a demand for relief against the Plaintiffs.  *See also Dan Nelson Automotive Group, Inc. v. Universal Underwriters Group*, Civ. 05-4044, 2008 WL 170084, *5 (D.S.D. Jan. 15, 2008) (holding that civil investigative demands issued by a state attorney general were a "claim" for the purposes of an errors and omissions policy because they commanded the insured to produce documents and to provide information relevant to alleged statutory violations); *Richardson Electronics, Ltd. v. Federal Ins. Co.,* 120 F.Supp.2d 698, 701 (N.D. Ill. 2000) (holding that a civil investigative demand and subpoenas issued pursuant to a federal antitrust investigation constituted a "claim" for the purposes of a directors and officers liability policy because a claim required only "a demand for something due" and the investigation required that the insured and its officers and directors comply with demands for testimony and production of documents).

**2.    The Pending Investigation Qualifies as an Administrative or Regulatory Proceeding Commenced by the Filing of a Notice of Charges, Formal Investigative Order or Similar Document.**

The investigation also falls within subpart (4) of the definition of "Claim", which encompasses "a formal administrative or regulatory proceeding . . . commenced by the filing of a notice of charges, formal investigative order or similar document."  Policy, § II.A.4, App. 7.  The Policy does not define the phrases "notice of charges" or "formal investigative order."  Those phrases therefore must be interpreted in favor of the Plaintiffs.  *National Union Ins. Co. of Pittsburgh, PA v. Willis*, 296 F.3d 336, 339 (5th Cir. 2002).  Under that standard, the subpoena and search warrants are, if not a "notice of charges" or "formal investigative order," certainly a "similar document."  The Application and Affidavit for the Agilis Search Warrant alleges that the documents to be seized are evidence of violations of 26 U.S.C. §§ 7201 and 7212 and 18 U.S.C. § 371.  App. 25.  The O'Connor Warrant Affidavit alleges that Individual Plaintiffs are promoting and/or operating alleged tax shelters.  App. 73-74.  These documents thus are a

"notice of charges" or similar document.  In addition, the subpoena is a court order compelling the production of documents pursuant to an IRS investigation.  The search warrants similarly are court orders authorizing the seizure of documents in furtherance of the IRS investigation. These documents thus are "formal investigative orders" or a similar document.

In a recent case, the United States District Court for the District of Maryland held that a government subpoena and investigative demand were a "claim" under a policy provision nearly identical to subpart (4) of the Travelers policy's definition of "Claim".  In that case, the insured entity, Amerix, was served with an administrative subpoena and a civil investigative demand by two state attorneys general.  *ACE American Ins. Co. v. Ascend One Corp.*, 570 F.Supp.2d 789, 792 (D. Md. 2008).  The policy defined the term "claim" to include "[a] civil, administrative or regulatory investigation against any Insured commenced by the filing of a notice of charges, investigative order or similar document."  *Id.* at 793.

In concluding that the subpoena and investigative demand constituted a "claim", the Court noted that the subpoena was captioned "In re Amerix" and that the demand stated that it sought documents relevant to the subject matter of an investigation of possible state law violations and made specific inquiries into Amerix's activities.  *Id.* at 797.  While noting that the documents themselves were sufficient to establish that they were issued pursuant to an administrative investigation of the insured for wrongful acts, the Court also cited the deposition of a corporate officer in which the assistant attorney general conducting the deposition stated that the state was investigating Amerix for potential violations of the law.  *Id.*

The facts of this case are analogous to those of *ACE*.  The Agilis Search Warrant identified Plaintiffs as "parties of interest" and sought documents concerning them that allegedly constituted evidence of violations of federal law.  Further, like the assistant attorney general in *ACE* who stated on the record that the state was investigating the insured, the IRS explicitly alleges in the O'Connor Warrant Affidavit that the Individual Plaintiffs are being investigated for

promoting and/or operating an alleged "tax scheme" and that Agilis and other entities controlled by the Individual Plaintiffs are used in the operation of the alleged scheme.

### 3. The Investigation Is a Demand for Relief or Proceeding Against an "Insured" for "Wrongful Acts."

The requirement that the investigation be "against" an "Insured" for a "Wrongful Act", *see* Policy, § II.A, is readily satisfied.  Agilis is the "Insured Organization."  Policy Declarations and §§ II.G, II.L, App. 5, 8.  Agilis' directors and officers, which include the Individual Plaintiffs, are "Insured Persons."  Policy, § II.H, App. 8; Wright Aff., ¶ 2, App. 1; Edwards Aff., ¶ 2, App. 128; Piper Aff., ¶ 2, App. 137.  The Policy broadly defines "Wrongful Act" to include any "actual or alleged act, error, omission, misstatement, misleading statement or breach of duty" by Agilis or its directors and officers in their capacity as such.  Policy, § II.S, App. 8-9.

The Agilis Search Warrant and Application and Affidavit identify Agilis and the three Individual Plaintiffs as "parties of interest" and assert that the materials to be seized are evidence of violations of federal tax and other statutes  App. 25, 31.  Although that alone should suffice to establish that the investigation is a "Claim" against an "Insured" for a "Wrongful Act", *see ACE American*, 570 F.Supp.2d at 797, the O'Connor Warrant Affidavit explicitly alleges that the Individual Plaintiffs are promoting and/or operating an alleged "tax scheme" and using Agilis and other entities under their control in that "scheme."  App. 74.  *See also Polychron*, 916 F.2d at 463 (stating that "the grand jury's investigation and the questioning by the Assistant United States Attorney amounted, as a practical matter, to an allegation of wrongdoing against [the insured], for which he prudently hired an attorney").

### C. THE PARTNERSHIP AND JOINT VENTURE EXCLUSION DOES NOT EXCUSE TRAVELERS FROM DEFENDING.

In the letter in which it denied coverage based on the Professional Services Exclusion, Travelers also stated that to the extent that the programs or conduct at issue related to the establishment of a partnership or joint venture, the Policy's Partnership and Joint Venture

Exclusion would apply to bar coverage.  App. 133-36.  Travelers appears to contend that this exclusion applies because the O'Connor Warrant Affidavit alleges that :  (i) clients who licensed the EXTRA product formed limited liability corporations ("LLCs"); (ii) the LLCs are partnerships; and (iii) the clients submit IRS Forms 1065-U.S. Return of Partnership Income with their federal tax returns.  App. 135.

Even assuming that all of the above is true, there is no good faith basis for Travelers' position that the Partnership and Joint Venture exclusion bars coverage.   The government appears to be complaining about the fact that the Plaintiffs were involved in promoting and operating alleged tax shelters, not that they were illegally forming partnerships or joint ventures. Moreover, the exclusion refers only to "partnerships" and "joint ventures," while the O'Connor Warrant Affidavit refers to LLCs.  App. 73-88.  The exclusion makes no mention of LLCs, which are a form of business organization that is distinct from a partnership or joint venture.  *See* Virgin Islands Uniform Limited Liability Company Act, 13 V.I.C. §§ 1101 et seq.

While the O'Connor Warrant Affidavit does refer to LLCs formed in connection with the EXTRA and VEXTRA plans as a "partnership," App. 74, it elsewhere correctly describes an LLC as a form of business entity, App. 62.  Certainly the fact that LLCs may be treated as a partnership for tax purposes does not transform an LLC into a partnership.  Unlike a partnership, for example, an LLC must file articles of organization with the state, and members of an LLC are not personally liable for debts or obligations of the corporation.  *See* 13 V.I.C. § 1202 (LLC formed by filing articles of organization); 13 V.I.C. § 1303 (members and managers of an LLC not liable for its debts, obligations and liabilities).  If Travelers intended the Partnership and Joint Venture Exclusion to extend to LLCs, it was incumbent upon Travelers to say so specifically.  *See, e.g.*, *Texas Dist. Lutheran Church-Missouri Synod v. Federal Ins. Co.*, No. 03-99-00268, 2000 WL 632648, *7 (Tex. App.-Austin 2000) (not designated for publication) (holding that exclusion for claims arising from the insured's conduct of business as an

investment advisor, etc. did not bar coverage where the insured church was not operating as any of the enumerated business forms, even though it was engaging in similar activities).

## VII.
## Prayer

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs, Agilis Benefit Services LLC, Dale K. Edwards, H. David Wright and Adelene V. Piper pray that their Motion be in all respects GRANTED, for the reasons set forth herein; and that the Court enter partial summary judgment declaring that Defendant, Travelers Casualty and Surety Company of America, is required to defend the underlying investigation.

Respectfully submitted,

BELLINGER & DeWOLF, L.L.P.

By:    /s/ Todd R. Hixon
        Todd R. Hixon
        State Bar No. 00797918
        10,000 N. Central Expressway, Suite 900
        Dallas, TX 75231
        (214) 954-9540 – Telephone
        (214) 954-9541 – Facsimile
        **thixon@bd-law.com** – Email

LYNCH, BREWER, HOFFMAN & FINK LLP

By:    /s/ Anne Robbins
        Steven L. Schreckinger (BBO #447100)
        Anne Robbins (BBO #561968)
        Lynch, Brewer, Hoffman & Fink, LLP
        101 Federal Street, 22nd floor
        Boston, MA 02110
        (617) 951-0800 – Telephone
        9617) 951-0811 – Facsimile

ATTORNEYS FOR AGILIS BENEFIT SERVICES LLC, DALE K. EDWARDS, H. DAVID WRIGHT AND ADELENE V. PIPER

I hereby certify that a true copy of the above Plaintiffs, Agilis Benefit Services, LLC, Dale K. Edwards, H. David Wright and Adelene V. Piper's Motion for Partial Summary Judgment and Brief in Support Thereof was served upon the attorney of record for each other party by electronic means on April 23, 2009.

/s/ Anne Robbins