IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| AGILIS BENEFIT SERVICES LLC, § <br> DALE K. EDWARDS, § <br> H. DAVID WRIGHT, and § <br> ADELINE V. PIPER, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> TRAVELERS CASUALTY AND SURETY § <br> COMPANY OF AMERICA, § <br> § <br> Defendant. § | CIVIL ACTION NO. 5:08-CV-213 |

**O R D E R**

The above-referenced case was referred to United States Magistrate Judge Caroline Craven for pre-trial purposes in accordance with 28 U.S.C. § 636. The Report and Recommendation of Judge Craven, which contains her proposed findings of fact and recommendations for the disposition of Plaintiff s' Partial Motion for Summary Judgment, Dkt. No. 21, and of Defendant's Motion for Summary Judgement, Dkt. No. 20, has been presented for consideration. Defendant filed objections to the Report and Recommendation of the Magistrate Judge, and Plaintiffs responded. Dkt. Nos. 38 and 40, respectively. Defendant also filed a reply, and Plaintiffs filed a sur-reply. Dkt. Nos. 42 and 43. The Court conducted a *de novo* review.

**I. BACKGROUND**

This lawsuit concerns insurance coverage under a directors and officers liability policy ("Policy") provided by Travelers Casualty and Surety Company of America ("Defendant") that covers claims made against Agilis Benefit Services, LLC ("Agilis") and its officers. Agilis and

three of its officers, Dale K. Edwards, H. David Wright, and Adeline V. Piper (collectively, "Plaintiffs") filed suit to recover the legal fees incurred by them in defending themselves against an investigation undertaken by the Internal Revenue Service ("IRS"). The IRS began an investigation alleging that the Individual Plaintiffs were involved in promoting alleged tax evasion schemes and that Agilis was used in implementing those schemes.

The Policy states that Travelers has a "duty to defend any 'Claim,' even if such 'Claim' is groundless, false or fraudulent." Defendant moved for summary judgment that it does not have a duty to defend the individual Plaintiffs against the ongoing federal investigation according to the terms of the insurance policy. Dkt. No. 20. Plaintiffs' partial motion for summary judgment argues that Defendant does have such a duty. Dkt. No. 21.

## II. REPORT AND RECOMMENDATION

In her Report and Recommendation of February 24, 2010, Judge Craven recommended that Defendant's motion for summary judgment be denied and that Plaintiffs' motion for partial summary judgment be granted. Dkt. No. 37 at 28. In reaching her conclusion, Judge Craven answered the following three questions: (1) whether a "Claim," as the Policy defines that term, has been made against the Individual Plaintiffs; (2) if a "Claim" has been made against the Individual Plaintiffs, whether that Claim is for "Wrongful Acts;" and (3) if a "Claim" has been made against the Individual Plaintiffs for "Wrongful Acts," whether the Policy's Professional Services exclusion excludes such Claim from coverage. *Id*. at 2. The Policy defines "claim" to mean

    1.  a written demand for monetary or non-monetary relief;

    2.  a civil proceeding commenced by service of a complaint or

>   similar proceeding;
>
>   3.  a criminal proceeding commenced by return of an indictment; or
>
>   4.  a formal administrative or regulatory proceeding. . . . , commenced by the filing of a notice of charges, formal investigative order or similar document;
>
> against an Insured for a Wrongful Act.

Judge Craven first determined that Plaintiffs did in fact make a "claim" under the language of the policy. Specifically, Judge Craven found that Plaintiffs stated a claim under subpart (1) of the Policy's definition of claim, which defines "claim" to mean "a written demand for monetary or non-monetary relief." *Id*. at 21. In so finding, Judge Craven concluded that a subpoena served on Agilis for the federal grand jury investigation and a search warrant authorizing the seizure of financial records, correspondence, travel records, address books, calendars, and other personal records of each of the Individual Plaintiffs constituted "written demands for monetary relief" both according to case law and the dictionary definition of "relief." *Id*. With respect to the second question, Judge Craven found that the claim made against the Plaintiff was for a "wrongful act." *Id*. at 26. Finally, Judge Craven found that the policy's professional services exclusion does not necessarily negate coverage. *Id*. at 28.

### III. PARTIES' POSITIONS

**A. Defendant's Objections**

Defendant proffers arguments similar to those argued before (and considered by) the Magistrate Judge. Primarily, Defendant argues that it is entitled to summary judgment because no "claim" has been made against the insureds. Dkt. No. 38 at 13. The policy language,

Defendant submits, implicates three distinct types of proceedings – civil proceedings, criminal proceedings, and formal administrative or regulatory proceedings – each commenced by a specific trigger. *Id*. Defendants then argue that because the investigation for which the Plaintiffs are seeking coverage is criminal in nature and no indictment has been returned against the Plaintiffs, then no "claim" has arisen. *Id*. at 13-14. According to Defendant, "the Policy . . . requires the return of an indictment as a prerequisite to coverage for criminal proceedings," and under contract interpretation principles, that provision "*must* be enforced." *Id*. at 14 (emphasis in original). Defendant adds that interpreting "claim" in the Magistrate Judge's way would read the phrase "commenced by an indictment" right out of the policy. *Id*. at 15.

Defendant also argues that Judge Craven's conclusion that the grand jury investigation falls under subpart (1) of the definition of "claim" because the subpoena and search warrants are written demand[s] for . . . non-monetary relief" is demonstrably incorrect. *Id*. Defendant contends that the Policy does not define the word "relief," which means that the term should be given its plain, ordinary and generally accepted meaning. *Id*. Consulting Black's Law Dictionary, Defendant argues that "[f]or there to be a 'Claim' under Part 1, [] a demand must have been made for 'relief' – that is, for monetary damages, an injunction, specific performance or some other remedy to enforce a right or to redress a wrong." *Id*. at 16. According to Defendant, the subpoena and search warrants at issue here did not demand "relief," but were instead "investigative tools" utilized to uncover evidence of possible crimes. *Id.*

Defendant also submits hat Judge Craven improperly conflated the subpoena and the search warrants with the larger investigation. *Id*. at 22. Defendant argues that even if the subpoena, the search warrants, or both, were "claims," its only obligation would be to reimburse

the costs Agilis incurred in turning over the demanded documents because the subpoena was directed solely to Agilis, not its directors or operators. *Id*. "While the subpoena and the search warrants sought materials about the [Directors and Operators], they sought nothing *from* them," Defendant argues. *Id.* at 22- 23 (emphasis in original). To the extend that Judge Craven concluded that the claim included the investigation initiated by the subpoena and search warrants, Defendant objects that the investigation is not a claim and the Plaintiffs cannot recover costs incurred in defending the investigation. *Id*. at 23.

Defendant also objects to Judge Craven's conclusion that the Plaintiffs' purported claim is one for "wrongful acts" as the Policy requires. *Id*. at 24. Defendant objects to Judge Craven's opinion that "the subpoena and search warrants more than suffice to show that the IRS is alleging that [the Insureds] committed a 'Wrongful Act.'" *Id*. at 24. The fault, according to Defendant, is that "neither the subpoena nor the search warrants allege any crime or other Wrongful Act against anyone, let alone against any Insured." *Id*. at 25.

Finally, Defendant argues that Judge Craven misinterpreted the Policy's professional services exclusion. *Id*. at 28. Defendant argues that "the Magistrate Judge sidestepped [Defendant's] argument with respect to the Exclusion, which was made expressly contingent on the possibility the Magistrate Judge might accept the Dutton Affidavit as proper summary judgment evidence." *Id*. Judge Craven did not consider the Dutton Affidavit; nevertheless, Defendant objects to Judge Craven's conclusion that the Professional Services Exception applies only to professional negligence claims and that the Defendant's reading would bar coverage for claims that are arguably covered in other provisions of the policy. *Id*. at 29-30. Additionally, Defendant submits, Judge Craven's interpretation is inconsistent with the wording of the

exclusion. *Id*. at 30.

**B. Plaintiffs' Response**

Plaintiffs respond that the IRS investigation, the subpoena, and search warrants issued pursuant to it are "claims" within subpart (1) of the Policy. Dkt. No. 40 at 9. Plaintiffs' primary argument is that Defendant freely chose the wording of its policy and "dramatically expanded upon the concept of what it would defend." *Id*. at 10. Plaintiffs rely on the principle that so long as more than one reasonable interpretation exists, policy language should be construed against the insurer to avoid excluding coverage. *Id*. (citing *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, LLP*, 267 F. Supp. 2d 601, 606 (E.D. Tex. 2003)). Specifically, Plaintiffs contend that – as Judge Craven found – the grand jury subpoena served on Agilis was a written demand for relief in the form of the production of the specified documents. *Id*. at 11. "Had Plaintiffs attempted to interfere with the execution of the warrants, they would have been subject to arrest and prosecution," Plaintiffs argue. *Id.*

Plaintiffs also argue subpart (1) applies to any written demand for relief even if criminal in nature. *Id*. at 12. Plaintiffs submit that the policy terms should be given their plain and ordinary meaning and that Defendant could have excluded demands related to a criminal investigation if it so desired. *Id.* at 13. Plaintiffs argue that under Texas law, any limitations on coverage should be read narrowly and that an insured reading the policy would understand that subpart (1) lacked the triggering events of subparts (2), (3), and (4), which means that subpart (1) applies to demands for relief made before any specific triggering event. *Id.* "If [Defendant] intended the definition of "Claim" to operate in some other manner, it was incumbent on [Defendant] to say so, in plain English[,]" Plaintiffs argue. *Id.*

In response to Defendant's argument that the subpoena and search warrants are not claims and do not seek relief, Plaintiffs argue that the term "relief" could be broadly construed to encompass the documents that Plaintiffs were commanded to produce. *Id.* at 16. Plaintiffs point to *Minuteman Int'l, Inc. v. Great American Ins. Co.*, No. 03 c 6067, 2004 WL 603482 (N.D. Ill. Mar. 22, 2004), and other cases as support for their position that the term "relief" encompasses documents and information sought by government investigators. *Id.* at 16-17. Plaintiffs also submit that Judge Craven was "correct to reject" *Diamond Glass Companies, Inc. v. Twin City Fire Ins. Co.*, No. 06-cv-13105, 2008 WL 4613170 (S.D.N.Y. Aug. 18, 2008), because it is contrary to Texas law and incongruent with other cases on the issue. *Id.* at 18. Specifically, Plaintiffs contend that the policy in *Diamond Glass* defined the term "claim" as "a judicial or administrative proceeding in which an insured 'may be subjected to a binding adjudication or liability for damages or other relief.'" *Id.* Plaintiffs contend that the present facts and policy language differ greatly from that at issue in *Diamond Glass*. *Id.*

Plaintiffs add that the investigation is a claim for "Wrongful Acts" within the meaning of the Policy because, as Judge Craven found, "numerous courts have recognized that government demands for information are serious matters." *Id.* at 26. Additionally, Plaintiffs submit, "the subpoena and search warrants identify Agilis and the Individual Plaintiffs as 'parties of interest' and seek materials concerning them and activities engaged in by them, including Agilis's corporate and client records and the Individual Plaintiffs' financial records, tax returns, correspondence, address books and calendars." *Id*. These demands in conjunction with the statutes allegedly violated constitute a claim for Wrongful Acts, and the policy, Plaintiffs add, does not require that the claim be against an Insured for Wrongful Acts of that Insured. *Id.*

Finally, Plaintiff responds that the Professional Services Exclusion does not negate Defendant's duty to defend because it may reasonably be read to bar only professional negligence claims. *Id.* at 31-32. Citing *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991), Plaintiffs argue that the exclusionary clause could reasonably be read to apply only to professional negligence claims. *Id*. at 32. Further, Plaintiffs submit that even if the exclusion were to be construed to apply to claims other professional negligence claims, Defendant has not met its burden to show that the government's allegations against the Plaintiffs "conclusively" activate the exclusion. *Id.*

### C. Defendant's Reply

In its reply, Defendant reiterates is position that neither the subpoena nor the search warrants are "claims" under the Policy. Dkt. No. 42 at 2. Defendants distinguish the subpoena and search warrants from "claims" for "Wrongful Acts" because they merely commanded the production of *evidence* so the grand jury could make its determination as to whether any wrongdoing had been committed. *Id*. at 3. Defendant again points to *Diamond Glass* as "the only decision that is on all fours with this case." *Id*. at 4.

### D. Plaintiffs' Sur-Reply

Plaintiffs reply by calling the Court's attention to a recent Fifth Circuit Court of Appeals case as support for the position that terms are given their ordinary and commonly understood meanings unless the policy indicates that the parties intended a different, technical meaning. Dkt. No. 43 at 1-2.

### IV. LEGAL PRINCIPLES

Where a dispositive pretrial matter has been referred to a magistrate judge for

recommendations, the district judge to whom the case is assigned will make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with the applicable rule pertaining to magistrate judges. FED. R. CIV. P. 72(b). The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. *Id*.

In a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). An issue is "material" where it involves a fact that might affect the outcome of the suit under the governing law of the underlying cause of action. *See Burgos v. S.W. Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir. 1994) (citing *Anderson,* 477 U.S. at 248). The nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe v. Corley,* 992 F.2d 540 (5th Cir. 1993). Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

## V. *DE NOVO* REVIEW

In this case, Defendant seeks a summary judgment that, as a matter of law, Plaintiffs do not have a "claim" as defined in the Policy at issue. There appears to be no dispute that Plaintiffs do not have a claim as it is defined under subpart (3): "a criminal proceeding commenced by return of an indictment." However, Defendant's main objection is that the Magistrate Judge erred in finding that Plaintiffs have a "claim" as it is defined in subpart (1) of the definition of claim, "(1) a written demand for monetary or non-monetary relief." Plaintiffs' primary counter argument is that when a policy is susceptible to more than one reasonable interpretation, Texas law requires that policy to be construed against the insurer and in favor of coverage. After conducting a *de novo* review, Defendants have not met their burden to demonstrate that Plaintiffs do not have a "claim" under the policy as a matter of law.

Under Texas law, if a policy contains a provision capable of more than one reasonable interpretation, the uncertainties are resolved in favor of the insured. *National Union Fire Ins. Co. of Pittsburgh, PA v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991); *see also Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, No. 10-20069, 2010 WL 909090, at *5 (5th Cir. March 16, 2010). Put another way, where both the insured and the insurer offer plausible interpretations of a policy provision, the insured's interpretation controls. *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 606 (E.D. Tex 2003). Thus, the threshold question is whether provision defining "claim" as "a written demand for monetary or non-monetary relief" can be broadly construed to include the subpoena and search warrants at issue.

On balance and as Judge Craven found, a demand for "relief" is broad enough to include

a demand for something due, including a demand to produce documents or appear before a grand jury. *See* Dkt. No. 37 at 21. Defendant's argument to the contrary is unavailing. Defendant drafted the broad language of subpart (1) and omitted any triggering event like those found in subparts (2), (3), or (4). An intent to exclude coverage must be expressed in clear and unambiguous language. *National Union*, 811 S.W.2d at 555. Similarly, it was incumbent on Defendant to define the relevant parts of its insurance policy such as "relief" rather than rely on the term as defined in a legal dictionary, which fails to provide a conclusive answer. *Cf. Pendergest-Holt*, 2010 WL 909090, at *6 ("The parties' word choice . . . leaves us guessing, but it hardly seems a drafting error, at least not an inadvertent one."). Absent clear guidance from the policy language, the parties both offer reasonable interpretations of "a written demand for monetary or non-monetary relief." In such an instance, Plaintiffs' interpretation controls.

Defendant relies on *Diamond Glass Companies, Inc. v. Twin City Fire Ins. Co.*, No. 06-cv-13105, 2008 WL 4613170 (S.D.N.Y. Aug. 18, 2008). In *Diamond Glass*, the district court found that "relief" – based on the ordinary and accepted meaning of the word and the context in which it was used – did not include investigative subpoenas and search warrants. *Diamond Glass*, 2008 WL 4613170, at *4. While the policy language at issue in *Diamond Glass* mirrors language at issue here, the case is distinguishable on two major grounds. First, the *Diamond Glass* court applied New York contract law in a diversity action. Texas law controls here. Specifically, the Diamond Glass court did not address or consider the notion – fundamental under Texas law – that ambiguous provisions are construed in favor of coverage. The *Diamond Glass* court concluded that a broader reading would produce an absurd result and construed the provision against coverage. *Id.* Second, with respect to a broad definition of "demand for non-

monetary relief" the *Diamond Glass* court stated that "interpreting 'demand for non-monetary relief' to include any investigative subpoena would require Defendants to insure Diamond's costs responding to any subpoena, notwithstanding the absence or any assertion of civil or criminal liability against Diamond or any of its directors or officers." *Id.*  But unlike *Diamond Glass*, there has been at least a signficant question as to the legality of Plaintiffs' actions in this case.  In particular, the Agilis search warrant stated that the special agent had reason to believe that the items to be seized were evidence of violations of 26 U.S.C. § 7201 and §7212 and 18 U.S.C. 371. Dkt. No. 37 at 7.  Further, had Plaintiffs refused or attempted to interfere with the executions of the warrant, they would have been subject to criminal liability and arrest.  Defendant's argument and reliance on Diamond Glass underestimate the seriousness of subpoena and search warrants. *Minuteman,* 2004 WL 603482, at *7.

     Defendant's other cited case are similarly distinguishable.  In *Center for Blood Research, Inc. v. Coregis Ins. Co.*, 305 F.3d 38 (1st Cir. 2002), the definition of "claim" at issue included any judicial or administrative proceeding in which any INSURED(S) may be subjected to a binding adjudication of liability for damages or other relief.  *Coregis*, 305 F.3d at 42.  The appellate court determined that the plaintiff did not have a claim because it "could not have been subject to a binding adjudication of liability in the investigation before the assistant United States attorney[.]" *Id.*  There is no requirement for binding adjudication here.  The other case cited by Defendant, *Foster v. Summit Medical Systems, Inc.*, 610 N.W.2d 350 (Minn. Ct. App. 2000), suffers from the same malady as *Coregis:* that the "Securities Action Claim" at issue requires a "binding adjudication of liability for damages or other relief[.]"  *Foster*, 610 N.W.2d at 354.

As Judge Craven found, the analysis of the *Minuteman* court is persuasive, and a conclusion that "relief" is broad enough to include a demand to produce documents or appear to testify accords with Texas law.  Further, this approach appears to be the one taken by the majority of the courts.  *See, e.g., Joseph P. Bornstein, Ltd. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 828 F.2d 242, 245 (4th Cir. 1987)*; Polychron v. Crum & Forster Ins. Co.*, 916 F.2d 461 (8th Cir. 1990).

Defendant's other arguments are similarly unavailing.  Contrary to Defendant's argument, Judge Craven did not "improperly conflate" the subpoena and search warrants and the overall investigation.  Defendant's position that the subpoena and search warrants sought materials *about* the individual Plaintiffs and not *from* them is rooted in semantics and unpersuasive.  Additionally, Defendant's argument that the claim was not one for "Wrongful Acts" also lacks merit.  As Judge Craven found, the subpoenas and search warrants in this case are not mere requests for information.  *See* Dkt. No. 37 at 25 ("Not only did the Agilis Search Warrant and Application and Affidavit identify Agilis and the Individual Plaintiffs as being 'parties of interest,' but they also sought evidence of 'contraband' used or intended to be used as the means of 'committing a criminal offense' concerning federal tax and other statutes.").  Thus, in this case, Defendant's purported distinction between *allegations* and *suspicions* cannot be sustained. *Minuteman,* 2004 WL 603482, at *7 (adding that the seriousness of subpoenas and search warrants should not be underestimated).

This reasoning also counsels against accepting Defendant's objection that Judge Craven misinterpreted the professional services exception.  Specifically, Defendant's argument that without an indictment alleging Wrongful Acts, one cannot determine whether the exclusion

applies ignores subpart (1) of the definition of "Claim." In short, as Judge Craven found, Defendant has not met its burden to show that the Professional Services Exclusion applies. Dkt. No. 37 at 28. To be sure, Defendant has not demonstrated that the EXTRA and VEXTRA plans involve professional services.

## VI. CONCLUSION

For the foregoing reasons, Defendant's objections to the Report and Recommendation of the Magistrate Judge, Dkt. No. 38, are hereby **OVERRULED**. Defendant's Motion for Summary Judgment, Dkt. No. 20, is hereby **DENIED**. Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 21, is hereby **GRANTED.**

**IT IS SO ORDERED.**

**SIGNED this 30th day of April, 2010.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE